IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH MIROCHA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11-cv-4542 |
| | ) | |
| PALOS COMMUNITY HOSPITAL, | ) | Judge Robert M. Dow, Jr. |
| an Illinois corporation, and KEN LASH, | ) | |
| individually, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Joseph Mirocha filed an eight-count complaint against his former employer, Palos Community Hospital ("PCH"), and his former manager, Ken Lash, primarily asserting claims under the Age Discrimination in Employment Act ("ADEA"). Before the Court is Defendants' motion [17] to dismiss parts of Count II and Counts IV-VIII for failure to state a claim. For the reasons stated below, the motion [17] is granted.

**I.      Background[1]**

PCH, a hospital located in Palos Heights, Illinois, hired Mirocha in 2003 as an electrical supervisor in the electrical/physical plant department; he was 51 years old at the time. [2 at ¶¶ 3, 14-15.] As an electrical supervisor, Mirocha supervised assigned employees' work to ensure that it conformed with established procedures, policies, and regulations. [2 at ¶ 16.]

In 2010, the electrical shop facilitated a large electrical infrastructure cut-over. [2 at ¶ 21.] On December 30, Lash gave Mirocha a verbal warning and 30 days to bring the electrical

---

[1] On a motion to dismiss, the Court accepts as true all well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn from them. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

department's database into full compliance. [2 at ¶ 17.] This task was not within Mirocha's job description. [2 at ¶ 19.] Rather, PCH's policies state that department managers, like Lash, are responsible for such issues. [2 at ¶¶ 24, 27.] On February 4, 2011, Lash gave Mirocha a written warning for failing to fulfill his job duties, citing electrical database deficiencies. [2 at ¶ 17.]

On February 18, Mirocha complained to human resources that he was being discriminated against because of his age. [2 at ¶ 28.] On March 4, Lash showed Mirocha a file memorandum indicating that Mirocha had satisfied Lash's earlier concerns. [2 at ¶ 29.] On March 8, however, Lash issued a revised memorandum, recanting his praise of Mirocha. [2 at ¶ 30.] At some point, Lash also wrote in a file memorandum that "[Mirocha's] most significant failure as the electrical supervisor has been his inability to identify what his job duties are and then to work well independently." [2 at ¶ 26.]

On March 28, Mirocha filed a charge of discrimination against PCH with the EEOC, alleging age discrimination and retaliation. [2 at ¶ 32, 18-1.] On April 8, Mirocha's employment was terminated. [2 at ¶ 33.] A human resources representative and Lash were present, but neither discussed the reasons for Mirocha's termination. [2 at ¶ 33.] That same day, Mirocha was escorted off the premises by a security guard. [2 at ¶ 35.] On April 11, Mirocha filed a second charge of discrimination against PCH with the EEOC, alleging retaliation. [2 at ¶ 2, 18-2.]

Rich Chapan, who was under 40 years old at the time, worked in PCH's plant engineering department, which underwent the same infrastructure cut-over as the electrical shop. [2 at ¶ 22.] Chapan and others employees in his department, however, were not warned or disciplined like Mirocha was. [2 at ¶ 22.]

2

On July 5, Mirocha filed a complaint in federal court, alleging eight counts: Count I (unlawful termination under the ADEA against PCH), Count II (retaliation under the ADEA, Title VII, and Section 1981 against PCH), Count III (retaliation under state law against PCH), Count IV (breach of agreement against PCH), Count V (defamation against PCH), Count VI (defamation against Lash), Count VII (negligent infliction of emotional distress against PCH), and Count VIII (intentional infliction of emotional distress against PCH). PCH answered Count I, some of Count II, and Count III. [20.] PCH moved to dismiss the remaining counts pursuant to Federal Rule of Civil Procedure 12(b)(6). [17.]

## II.      Legal Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," such that the defendant is given " 'fair notice of what the * * * claim is and the grounds upon which it rests.' " *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the " 'speculative level.' " *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 127 S. Ct. at 1965, 1973 n.14). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 127 S. Ct. at 1969.

## III.     Analysis

PCH moves to dismiss parts of Count II and Counts IV-VIII for failure to state a claim. The Court will address each count in turn.

3

A.      **Count II (Retaliation against PCH)**

In Count II, Mirocha alleges that PCH took adverse action against him for engaging in protected activity, in violation of the ADEA, Title VII, and 42 U.S.C. § 1981.  PCH moves to dismiss the Title VII and § 1981 claims.  Mirocha concedes error on this point and withdraws his reference to those statutes.  [32 at 2-3.]  Accordingly, Count II's Title VII and § 1981 claims are dismissed.

B.      **Count IV (Breach of Agreement against PCH)**

In Count IV, Mirocha alleges that PCH breached an unidentified "agreement" to engage in progressive discipline before termination.  In response to PCH's motion to dismiss, Mirocha attached policy 951.708; PCH, in turn, attached policy 951.001, the introductory section of the policy manual.[2]  [32-1, 37-1.]  Under Illinois law, to overcome the presumption of an at-will employment, an employee must show that a handbook or policy meets the traditional contract formation requirements of offer, acceptance, and consideration.  See *Duldulao v. St. Mary of Nazareth Hosp. Ctr.*, 505 N.E.2d 314, 318 (Ill. 1987).

Mirocha argues that policy 951.708 contains sufficient "positive and mandatory" language to be deemed contractual under *Duldulao* and a similar case, *Nickum v. Village of Saybrook*, 972 F. Supp. 1160 (C.D. Ill. 1997).[3]  [32 at 6.]  In *Duldulao*, the court found that the handbook in question presented an offer where it provided that termination "*cannot occur without proper notice*" and that employees "*are never* dismissed without prior written

---

[2]  Because PCH's policies were referenced in the complaint and are central to Mirocha's claims, the Court may consider the attachments without converting the motion to dismiss into a motion for summary judgment.  See *Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009).

[3]  Mirocha also attempts to rely on *Munoz v. Expedited Freight Systems, Inc.*, No. 89 C 3700, 1990 WL 114589 (N.D. Ill. July 23, 1990).  There, however, the employer conceded that the handbook created a binding contract between itself and the employee.  *Id.* at *2.

admonitions." 505 N.E.2d at 318 (emphasis added). In *Nickum*, the handbook likewise mandated that disciplinary action "*will* be given" and that a written report "*must* be submitted." 972 F. Supp. at 1165 (emphasis added).

Here, by contrast, policy 951.708 states that "[w]hile action should *generally* begin with verbal counseling, the process *may be* initiated at a written counseling step or above for more serious offenses" and then proceeds to describe the possible steps. [32-1 (emphasis added).] The policy therefore indicates that progressive disciplinary procedures may be available but are not mandated. See *Fragakis v. Ill. State Toll Highway Auth.*, No. 05 C 2741, 2006 WL 533359, at *2 (N.D. Ill. Mar. 3, 2006) (dismissing similar breach of contract claim); see also *St. Peters v. Shell Oil Co.*, 77 F.3d 184, 188 (7th Cir. 1996) (collecting similar cases). Moreover, unlike in *Duldulao*, see 505 N.E.2d at 319, the manual here contains a disclaimer. Policy 951.001 states that the manual "serves as an overall guideline and nothing in this manual constitutes an employment contract between PCH and any of its employees." [37-1.] Because Mirocha has not alleged "a promise clear enough that an employee would reasonably believe that an offer has been made" (*Duldulao*, 505 N.E.2d at 318), Count IV is dismissed.

### C.     Count V (Defamation against PCH)

In Count V, Mirocha alleges that PCH defamed him by escorting him off the premises by a security guard as other people watched. Under Illinois law, to show defamation *per se*, acts must be so "obviously or naturally harmful" as to "falsely impute . . . a lack of integrity in the discharge of plaintiff's duties of employment." *Dubrovin v. Marshall Field's & Co. Employee's Credit Union*, 536 N.E.2d 800, 803 (Ill. App. Ct. 1989). Illinois courts have specifically held that escorting an employee off the premises, without more, is not defamation *per se* because such acts are reasonably susceptible to an innocent interpretation. See, *e.g.*, *Davis v. John Crane, Inc.*,

633 N.E.2d 929, 938 (Ill. App. Ct. 1994) (affirming summary judgment on defamation claim where plaintiff was escorted off premises by security guards); *Dubrovin*, 536 N.E.2d at 803 (affirming dismissal of defamation claim where plaintiff was escorted out of office and inspected by security guard). Mirocha fails to distinguish this precedent. Accordingly, Count V is dismissed.

        **D.**       **Count VI (Defamation against Lash)**

In Count VI, Mirocha alleges that Lash defamed him by distributing disciplinary memoranda to others. Under Illinois law, several categories of statements are recognized as defamation *per se*, including words imputing: 1) an inability to perform or want of integrity in the discharge of duties of office or employment; or 2) lack of ability in a trade, profession, or business. *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 206 (Ill. 1992). But, as previously explained, even a statement falling into one of these categories is not defamatory *per se* if it is reasonably capable of an innocent construction. *Id.* "Whether a statement is reasonably susceptible to an innocent interpretation is a question of law for the court to decide." *Id.* at 207.

Mirocha alleges that Lash's disciplinary memoranda held Mirocha responsible for tasks that were beyond his job description. Specifically, Lash wrote in a file memorandum that "[Mirocha's] most significant failure as the electrical supervisor has been his inability to identify what his job duties are and then to work well independently." [2 at ¶ 26.] But even this statement is readily subject to an innocent construction: Lash was documenting Mirocha's specific performance failures at this particular job, not imputing a general inability to perform. See *Van Vliet v. Cole Taylor Bank*, No. 10 CV 3221, 2011 WL 148059, at *6 (N.D. Ill. Jan. 18, 2011) (collecting similar cases). For this reason, the case on which Mirocha primarily relies is inapposite. See *Randy Gibson v. Philip Morris, Inc.*, 685 N.E.2d 638, 644 (Ill. App. Ct. 1997)

(affirming trial court's finding of defamation *per se* where only reasonable construction of co-workers' statements was accusation that plaintiff violated company policy).[4]

### E. Counts VII and VIII (Infliction of Emotional Distress against PCH)

In Counts VII and VIII, Mirocha alleges that PCH engaged in negligent infliction of emotional distress and intentional infliction of emotional distress, respectively. Under Illinois law, tort claims that are "inextricably linked" to a cause of action arising under the Illinois Human Rights Act are preempted. *Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000); see also 775 ILCS 5/8-111(D). The Act prohibits, among other things, age discrimination. 775 ILCS 5/1-102(A).

Here, Mirocha brings emotional distress claims based on "the acts complained of above," namely, his allegations of age discrimination. [2 at ¶¶ 59, 60.] Because PCH's conduct is only offensive if it was based on Mirocha's age, the emotional distress claims are inextricably linked to the ADEA claims. See *Krocka*, 203 F.3d at 516 (affirming dismissal of similar emotional distress claim). To the extent Mirocha contends that dismissal is inappropriate because his emotional distress claims depend only on his defamation claims [see 32 at 15], the latter claims are no longer viable. Accordingly, Counts VII and VIII are dismissed.

## IV. Conclusion

For these reasons, Defendants' motion to dismiss [17] is granted. In the event that Plaintiff believes that he can cure the deficiencies identified above in an amended complaint, consistent with legal authority and Rule 11 concerns, Plaintiff is given 21 days in which to

---

[4] The Court does not reach Lash's alternative argument that his statements were protected by a qualified privilege because this argument was omitted in his opening brief. See *Nelson v. La Crosse Cnty. Dist. Attorney*, 301 F.3d 820, 836 (7th Cir. 2002) ("It is well settled that issues raised for the first time in a reply brief are deemed waived.").

8

submit a motion for leave to file an amended complaint.  If no such motion is filed—or if the

motion is denied—the case will proceed with Counts I, II (ADEA claim only), and III.

Dated:  August 22, 2012                                    _____

                                                            Robert M. Dow, Jr.
                                                            United States District Judge